**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX GARNETT, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>RLX TECHNOLOGY INC., YING (KATE) WANG, LONG (DAVID) JIANG, YILONG WEN, YUEDUO (RACHEL) ZHANG, COLLEEN A. DEVRIES, COGENCY GLOBAL INC., CITIGROUP GLOBAL MARKETS INC., and CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED,<br><br>                Defendants. | Case No. 1:21-cv-05125-PAE<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Alex Garnett ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts; and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by RLX Technology Inc. ("RLX" or the "Company"), articles and other publications, including media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein.

<u>**NATURE AND SUMMARY OF THE ACTION**</u>

1.      Plaintiff brings this securities class action on behalf of persons: (1) who purchased, or otherwise acquired, RLX American Depositary Shares ("ADS") pursuant or traceable to the F-1 registration statement (including all amendments made thereto) and related prospectus on Form 424B4 (collectively, the "Registration Statement") issued in connection with RLX's January 2021

initial public stock offering (the "IPO" or the "Offering"); and (2) who purchased, or otherwise acquired, RLX ADS between January 22, 2021 and June 2, 2021, inclusive (the "Class Period") and who were damaged thereby

2.     This action asserts non-fraud, strict liability claims under §§11, 12, and 15 of the Securities Act of 1933 (the "1933 Act" or "Securities Act"), against RLX, certain RLX officers and directors, the underwriters of the IPO, and RLX's U.S. representatives (collectively, the "Defendants") (the "Securities Act Claims").  This action also asserts fraud claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act" or the "Exchange Act"), against RLX and the same RLX officers and directors (the "Exchange Act Claims").

3.     RLX purports to be the "No. 1 branded e-vapor company in China," which it also claims is its "largest potential market."  RLX conducted its IPO in New York, and its ADS are listed on the New York Stock Exchange ("NYSE") under the ticker symbol "RLX."

4.     In January 2021, as part of RLX's IPO, Defendants issued approximately 116.5 million ADS to the investing public at $12 per ADS, all pursuant to the Registration Statement.

5.     The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading.  Among other things, the Registration Statement misrepresented and omitted that RLX knew (or had information making it foreseeable to know), *at the time of the IPO*, that China was working on a national standard for e-cigarettes that would bring them into line with regular cigarette regulations.  What is more, RLX knew that its reported financials were not nearly as rosy as the Registration Statement made it seem, nor indicative of future results.  By omitting these facts and, for example, representing that the risk of regulation was only a contingent possibility, Plaintiff and other ADS purchasers were unable to adequately assess the value of the

shares offered in connection with the IPO, and thus purchased their ADS without material information and to their detriment.

6.      With these material omissions and misrepresentations in the Registration Statement, Defendants went forward with the IPO, raising *approximately $1.4 billion* in gross proceeds.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered hundreds of millions of dollars in damages.

## JURISDICTION AND VENUE

8.      The Securities Act claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act, 15 U.S.C. §§77k and 77o.

9.      The Exchange Act claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1337, §22 of the Securities Act, 15 U.S.C. §77v, and §27 of the Exchange Act, 15 U.S.C. §78aa.

11.     Venue is properly laid in this District pursuant to §22 of the Securities Act, §27 of the Exchange Act, and 28 U.S.C. §1391(b).  Many of the acts and transactions that constitute violations of law complained of herein, including the dissemination to the public of untrue statements of material facts, occurred in this District.  RLX ADS are listed on the NYSE, a national securities exchange, located in this District.

12.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of the national securities exchange.

## PARTIES

13.     As set forth in the attached Certification, Plaintiff purchased the Company's ADS pursuant and traceable to the Registration Statement and IPO, and during the Class Period, and was damaged thereby.

14.     Defendant RLX manufactures and sells vaping products in China.  RLX conducted the IPO in New York, and its ADS are listed on the NYSE under the ticker symbol "RLX."

15.     Defendant Ying (Kate) Wang ("Wang") founded RLX and was, at the time of the IPO, RLX's Chief Executive Officer ("CEO") and Chairperson of RLX's Board of Directors (the "Board").  Defendant Wang reviewed, contributed to, and signed the Registration Statement.

16.     Defendant Long (David) Jiang ("Jiang") founded RLX and was, at the time of the IPO, a director on the Board.  Defendant Jiang reviewed, contributed to, and signed the Registration Statement, or authorized the signing thereof.

17.     Defendant Yilong Wen ("Wen") founded RLX and was, at the time of the IPO, a director on the Board.  Defendant Wen reviewed, contributed to, and signed the Registration Statement, or authorized the signing thereof.

18.     Defendant Yueduo (Rachel) Zhang ("Zhang") was, at the time of the IPO, Head of Finance.  Defendant Zhang reviewed, contributed to, and signed the Registration Statement, or authorized the signing thereof.

19.     Defendant Colleen A. DeVries ("DeVries") served as Senior Vice President on behalf of Defendant Cogency, the designated U.S. representative of Defendant RLX, and reviewed, contributed to, and signed the Registration Statement.

20.     Defendants Wang, Jiang, Wen, Zhang, and DeVries are collectively referred to herein as the "Individual Defendants."  The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential RLX investors, all motivated by their own, and the Company's, financial interests.

21.     Defendant Cogency Global Inc. ("Cogency") was RLX's authorized U.S. representative for purposes of the IPO.  Defendant DeVries, who signed the Registration Statement, is an employee of Defendant Cogency.  As a result, Defendant Cogency is liable for the securities law violations committed by Defendant DeVries, in its capacity as employer and as a control person under the Securities Act.

22.     Defendants Citigroup Global Markets Inc. ("Citigroup") and China Renaissance Securities (Hong Kong) Limited ("China Renaissance") are financial services companies that acted as underwriters for RLX's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RLX securities issued pursuant thereto.  These Defendants are referred to herein as the "Underwriter Defendants."

23.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

a.     The Underwriter Defendants are investment banking houses that specialize, *inter alia*, in underwriting public offerings of securities.  They served as the underwriters of the IPO and received tens of millions of dollars in fees (collectively), for their service.  The Underwriter Defendants arranged a multi-city road show prior to the IPO, during which they, and

representatives from RLX, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

b.      The Underwriter Defendants also demanded and obtained an agreement from RLX and the Individual Defendants, that RLX would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.  They also made certain that RLX had purchased millions of dollars in directors' and officers' liability insurance.

c.      Representatives of the Underwriter Defendants also assisted RLX and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of RLX, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO.  During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning RLX's most up-to-date operational and financial results and prospects.

d.      In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with RLX's lawyers, management and top executives and engaged in "drafting sessions" ahead of the IPO.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which RLX ADS would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about RLX would be made in the Registration Statement; and (v) what responses would be made to the SEC, in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and RLX's management and top executives, the

Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, RLX's existing problems as detailed herein.

e.     Finally, the Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

## DEFENDANTS FALSE AND MISLEADING REGISTRATION STATEMENT AND PROSPECTUS

24.     On October 26, 2020, RLX filed with the SEC, a confidential draft registration statement on Form F-1, which would be used for the IPO, following a series of amendments in response to SEC comments.

25.     On January 19, 2021, RLX filed its final amendment to the Registration Statement, which registered 133,975,000 RLX ADS for public sale.  The SEC declared the Registration Statement effective on January 21, 2021.  On January 22, 2021, Defendants priced the IPO at $12 per ADS and filed the final prospectus for the IPO, which forms part of the Registration Statement. Through the IPO, Defendants issued and sold approximately 116,500,000 RLX ADS, all pursuant to the Registration Statement, for gross proceeds of nearly $1.4 billion.

26.     The Registration Statement contained untrue statements of material fact and omitted to state material facts, both required by governing regulations and necessary to make the statements made not misleading.

27.     In particular, the Registration Statement misrepresented and omitted RLX's exposure to China's *then-existing* campaign to establish a national standard for e-cigarettes that would bring them into line with regular cigarette regulations.  For example, RLX expressly distances itself (and its products) from falling under the administration of China's tobacco monopoly system, stating in relevant part:

**Regulations Related to Our Products**

***Currently, our e-vapor products are not specifically defined as "tobacco products" under the tobacco monopoly license system of the PRC, and thus our products are not under the administration of the tobacco monopoly system and do not violate relevant laws and regulations relating to tobacco monopoly***. Except for the announcements prohibiting the sale of e-cigarettes, including e-vapor products, to juveniles and sale through the internet, as well as the smoking control rules of some cities regarding using e-cigarettes as a form of smoking, ***there are currently no laws and regulations which specifically govern the distribution of e-cigarettes in the PRC***. We are therefore subject to general PRC business licensing requirements and its business operations are subject to laws and regulations that are generally applicable to electronic products, such as laws and regulations relating to product quality and consumer rights.

**Tobacco Monopoly Law**

The Tobacco Monopoly Law of the PRC, or the Tobacco Monopoly Law, adopted by the Standing Committee of the National People's Congress on June 29, 1991 and last amended on April 24, 2015, and the Implementation Regulation of the Tobacco Monopoly Law issued by the State Council on July 3, 1997 and last amended on February 6, 2016, stipulated a tobacco monopoly license system for tobacco monopoly commodities. Pursuant to the Tobacco Monopoly Law and its Implementation Regulation, the state exercised monopoly administration in accordance with law over the production and sale of tobacco monopoly commodities; "tobacco monopoly commodities" refers to cigarettes, cigars, cut tobacco, redried leaf tobacco, leaf tobacco, cigarette paper, filter rods, cigarette tow and special tobacco machines. Cigarettes, cigars, cut tobacco and redried leaf tobacco are generally referred to as "tobacco products" under the Tobacco Monopoly Law. ***Our products are not currently defined as "tobacco products" in the Tobacco Monopoly Law and its Implementation Regulation***.

[Emphasis added.]

28.    The Registration Statement added to this narrative by mentioning China's previous efforts to limit the sale of e-vapor products to the underage while simultaneously representing that RLX was unaware of how government authorities in China planned to regulate e-vapor products, if at all, suggesting instead that the risk of regulation was only a contingent possibility. Specifically, the Registration Statement stated in relevant part:

***Changes in existing laws, regulations and policies and the issuance of new laws, regulations, policies and any other entry barriers in relation to the e-vapor industry***

***have materially and adversely affected and may further materially and adversely affect our business operations.***

As e-vapor products have become more and more popular in recent years, government authorities in China ***may*** impose more stringent laws, regulations and policies to regulate such products and the e-vapor industry.

Some countries have prohibited the usage of e-vapor products in certain areas or imposed specific taxes on e-vapor products. ***In China, there are currently no clear and specific national laws, regulations, rules or standards for the sale of e-cigarettes, including e-vapor products, save for the announcements regarding prohibition on the sale of e-cigarettes to the underage as well as online advertisement and sale through the internet***. On August 28, 2018, the State Administration for Market Regulation and the State Tobacco Monopoly Administration jointly issued Announcement on Prohibition of Selling E-Cigarettes Products to the Underage, or the August 2018 Announcement, which specifically prohibits all sales of e-cigarettes to the underage. On October 30, 2019, the State Administration for Market Regulation and the State Tobacco Monopoly Administration jointly issued the Announcement on Further Protecting the Underage from E-Cigarettes, or the October 2019 Announcement, to further strengthen the protection of the physical and mental health of the underage and prevent the underage from buying e-cigarettes through the internet and using them. The October 2019 Announcement urged (i) e-cigarette producers and sellers to shut down their online sales websites or online sales application programs and to withdraw the advertisements published on the internet; and (ii) e-commerce platform operators to close e-cigarette online shops and take e-cigarettes off shelves. We sold some of our products online prior to the issuance of the October 2019 Announcement, and we took necessary measures to adjust our business to follow the October 2019 Announcement, including but not limited to the ceasing of online operations and online marketing activities and rigorously implementing underage usage prevention initiatives. As a result of the October 2019 Announcement and our adjustment measures, revenues generated from sales to users through third-party e-commerce platforms and sales to third-party e-commerce platform distributors decreased significantly to nominal, and we do not expect to generate revenues from selling e-vapor products through these distribution channels going forward.

The August 2018 Announcement and the October 2019 Announcement, as well as any laws, regulations or governmental announcements that regulate the sale and use of e-cigarettes, ***may*** continue to adversely affect our business, growth and prospects. For example, the Notice of Maintaining Civil Aviation Order to Ensure Air Transportation Security promulgated by Civil Aviation Administration of China states that the usage of e-cigarettes would be treated as smoking and is therefore prohibited in aircrafts. In addition, some cities, such as Shenzhen, Hangzhou, Chengdu, Xi'an, Nanning and Chongqing, have banned the use of e-cigarettes in public places, which include, among others, public transportation and indoor workspace. Such prohibition ***may*** also affect the usage of our products, which ***may*** in turn adversely affect the sales of our products. Further, sales of e-cigarettes in China are also subject to relevant PRC laws and regulations that are generally applicable to the sales of goods, such as the PRC Civil Code and the Product Quality Law of the PRC. See "Regulation—Regulations Related to Our Products."

In addition, certain articles published on *Bulletin of the WHO* stated that governments should consider prohibiting the use of e-vapor products in indoor areas to protect non-users from involuntary exposure to second-hand aerosols, issuing warnings about the potential health risks of e-vapor products and imposing higher taxes on e-vapor products. Certain limitations ***may*** be imposed on the e-vapor industry, such as prohibition of usage in public spaces or imposition of additional tax, either of which may materially and adversely affect the development of the e-vapor industry.

***We cannot assure you that government authorities will not impose further restrictions on e-vapor products in the future, including but not limited to requirements to obtain and maintain licenses, approvals or permits for relevant business operation***. Such restrictions, if any, ***may*** adversely affect supplies of raw materials, production and sales activities, taxation or other aspects of our business operation. We ***may*** not be able to comply with any or all changes in existing laws and regulations or any new laws and regulations and ***may*** incur significant compliance cost. ***It is uncertain how government authorities in China will regulate e-vapor products or harm-reduction products in general and what additional regulations we may be subject to***. All of the above ***may*** affect our production or market demand for e-vapor products, and thus adversely affect our business, financial condition and results of operations. As we continue to grow in scale and significance, we expect to face increased scrutiny, which ***may*** result in increased investment in compliance and related capabilities.

[Emphasis added.]

29.     Additionally, the Registration Statement touts how, "as the industry leader," RLX has "been, and expect[s] to continue to be, benefiting from the rapid growth of China's e-vapor market," juxtaposing these sentiments with select financial results as a means of conveying to prospective investors that its ***then-existing*** financial condition and prospects were equally bright. For example, with respect to RLX's net revenues, the Registration Statement provides:

***We have experienced substantial growth with net revenues*** increasing from RMB132.6 million for the period from January 2, 2018 (date of inception) to December 31, 2018, or the 2018 period, to RMB1,549.4 million (US$228.2 million) for the year ended December 31, 2019, and from RMB1,138.9 million for the nine months ended September 30, 2019 to RMB2,201.3 million (US$324.2 million) for the nine months ended September 30, 2020.

*         *         *

Our net revenues for October 2020 reached RMB468.9 million (US$69.1 million), which consisted of net revenues from sales to offline distributors of RMB454.7 million (US$67.0 million) and other net revenues of RMB14.2 million

(US$2.1 million), ***representing an increase of 92.7%*** from net revenues of RMB243.3 million for October 2019, which primarily consisted of net revenues from sales to offline distributors of RMB199.5 million and net revenues from sales to end users through third-party e-commerce platforms of RMB39.2 million.  The increase in net revenues from sales to offline distributors was primarily due to the expansion of our distribution and retail network, which led to significant increase in shipment of rechargeable e-vapor devices and cartridges.  In October 2020, we shipped 1.3 million units of rechargeable e-vapor devices and 26.1 million units of cartridges, compared to 0.7 million units of rechargeable e-vapor devices and 12.9 million units of cartridges shipped in October 2019.

[Emphasis added.]

The Registration Statement also shows cash and cash equivalents ballooning from $19,963 as of December 31, 2019 to $40,215 as of September 30, 2020, suggesting an increase of over 101%.

30.     In truth, however, RLX knew at the time of its IPO that these selective financial metrics were overstated and, further, that they were not indicative of future financial performance since regulators in China were ***already*** working on a national standard for e-cigarettes that would regulate them either under the same rules or in the same manner as ordinary cigarettes.  Because the Registration Statement did not disclose the then-known existential threat that China's ongoing push to regulate the industry posed, and the impact such regulation was already having, and certain to continue to have, on the Company's business and prospects, Plaintiff and other ADS purchasers had no opportunity to adequately assess the value of the shares offered in connection with the IPO.

31.     Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons.  First, SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), required disclosure of any known events or uncertainties that at the time of the IPO had caused, or were reasonably likely to cause, RLX's disclosed financial information not to be indicative of future operating results.  At the time of the IPO, RLX knew of, or in the exercise of reasonable care should have known, that its financials from earlier periods were both overstated and not indicative of its future performance because of pending regulations controlling the sale

and distribution of RLX's products.  This undisclosed, materially negative event and trend was likely to (and in fact did) materially and adversely affect RLX's financial state and rendered the disclosed results and trends in the Registration Statement misleading and not indicative of its future operating results.

32.     Second, SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative, and that each risk factor adequately describe the risk. RLX's discussions of risk factors did not even mention, much less adequately describe the risk posed by China's ongoing effort to establish a national standard for e-cigarettes that would bring them into line with ordinary cigarette regulations, the negative impact this regulatory construct was already having, if not likely to have, on RLX's business, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

33.     Third, Defendants' failure to disclose the ongoing effort by China to regulate e-cigarettes under the construct of then-existing tobacco laws, and other already occurring negative results and trends, much less the likely and consequent materially adverse effects on the Company's future results, share price, and prospects, rendered false and misleading the Registration Statement's many references to known risks that, "if" occurring "might" or "could" affect the Company.  These "risks" had already materialized at the time of the IPO.

34.     Notwithstanding, Defendants went forward with the IPO, with the foregoing misrepresentations and omissions in the Registration Statement.  With these misrepresentations and omissions, the IPO was extremely lucrative for Defendants, who raised nearly $1.4 billion in gross proceeds.

35.     Then, before the market opened on March 22, 2021, a mere eight weeks after RLX's

IPO, draft regulations were posted by the Ministry of Industry and Information Technology that

confirmed e-cigarettes and new tobacco products would be regulated similar to traditional tobacco

offerings.

36.     On this news, the price of RLX ADS suffered an enormous decline.  Indeed, on

March 22, 2021, RLX's ADS closed at $10.15 per ADS, down nearly 48% from its previous close

of $19.46 per ADS on March 19, 2021, the previous trading day.

37.     On April 23, 2021, RLX filed with the SEC its Annual Report on Form 20-F for

the fiscal year ended December 31, 2020 (the "2020 Annual Report").

38.     The 2020 Annual Report continued and reinforced the misrepresentations made in

the Registration Statement, including the same statements set forth above at ¶¶27-28.

39.     With respect to RLX's net revenues, the 2020 Annual Report states:

Our net revenues increased by 146.5% from RMB1,549.4 million for year ended
December 31, 2019 to RMB3,819.7 million (US$585.4 million) for the year ended
December 31, 2020.

40.     The 2020 Annual Report also discussed the draft regulations as follows:

[O]n March 22, 2021, the Ministry of Industry and Information Technology, or the
MIIT, issued the Decision to Amend the Implementation Regulations of the
Tobacco Monopoly Law of the People's Republic of China (Draft for Comment),
or the Draft Amendment, which proposes to add another article to the
Implementation Regulations as Article 65, that is, "the regulation for next-
generation tobacco products including e-cigarettes shall make reference to the
relevant regulations for cigarettes under the Implementation Regulations." The
MIIT is currently soliciting comments for the Draft Amendment, and the relevant
regulatory rules are in the process of being formulated. If the Draft Amendment is
approved and promulgated as it is, our e-vapor products may be subject to further
regulation as tobacco products, which may increase our compliance burden and
thus adversely affect our business, financial condition and results of operations. We
cannot assure you that government authorities will not impose further restrictions
on e-vapor products in the future, including but not limited to requirements to
obtain and maintain licenses, approvals or permits for relevant business operation.
Such restrictions, if any, may adversely affect supplies of raw materials, production
and sales activities, taxation or other aspects of our business operation. We may not

be able to comply with any or all changes in existing laws and regulations or any new laws and regulations and may incur significant compliance cost. It is uncertain how government authorities in China will regulate e-vapor products or harm-reduction products in general and what additional regulations we may be subject to. All of the above may affect our production or market demand for e-vapor products, and thus adversely affect our business, financial condition and results of operations. As we continue to grow in scale and significance, we expect to face increased scrutiny, which may result in increased investment in compliance and related capabilities.

41.     Then, when the Company published its first quarter 2021 financial results on June 2, 2021, announcing only a 48% increase in net revenues quarter over quarter, and second quarter guidance suggesting that its gross margin would "remain steady," RLX's shares declined again, closing on June 4, 2021 at $9.90 per ADS, down nearly 9% from its June 3, 2021 close of $10.87 per ADS, before falling even lower.  As of market close the day before the filing of this Amended Complaint, the price was $4.85.  All told, investors have lost hundreds of millions of dollars.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action on behalf of all those who purchased RLX ADS pursuant or traceable to the Registration Statement (the "Securities Act Class") and all those who purchased RLX ADS during the Class Period ("the Exchange Act Class") (together, the "Class").  Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have, or had, a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by RLX or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct, in violation of federal law, that is complained of herein.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> (a)     whether Defendants violated the Securities Act;
>
> (b)     whether Defendants violated the Exchange Act;
>
> (b)     whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and
>
> (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### For Violation of §11 of the Securities Act
### Against All Defendants

48.     Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

49.     This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

50.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

51.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

52.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true, without omissions of any material facts, and were not misleading.

53.     By reason of the conduct herein alleged, each Defendant violated, or controlled a person who violated, §11 of the Securities Act.

54.     Plaintiff acquired RLX ADS pursuant to the Registration Statement.

55.     Plaintiff and the Class have sustained damages.   The value of RLX ADS has declined substantially subsequent to, and due to, Defendants' violations.

56.     At the time of his purchases of RLX ADS, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this Complaint is based, to the time that Plaintiff commenced this action.  Less than three

years have elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

**SECOND CAUSE OF ACTION**
**For Violation of §12(a)(2) of the Securities Act**
**Against All Defendants**

57.     Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

58.     This Cause of Action is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

59.     By means of the defective prospectus, Defendants promoted, solicited, and sold RLX shares to Plaintiff and other members of the Class.

60.     The prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff, and the other members of the Class who purchased RLX shares pursuant to the prospectus, the duty to make a reasonable and diligent investigation of the statements contained in the prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated, in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the prospectus, as set forth above.

61.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the prospectus at the time Plaintiff acquired RLX shares.

62.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased RLX shares, pursuant to the prospectus, sustained substantial damages

17

in connection with their purchases of the shares.  Accordingly, Plaintiff and the other members of the Class who hold the ADS issued pursuant to the prospectus, have the right to rescind and recover the consideration paid for their shares, and hereby tender their ADS to Defendants sued herein. Class members who have sold their ADS seek damages to the extent permitted by law.

**THIRD CAUSE OF ACTION**
**For Violation of §15 of the Securities Act**
**Against All Defendants Except the Underwriter Defendants**

63.     Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

64.     This Cause of Action is brought pursuant to §15 of the Securities Act against all Defendants, except the Underwriter Defendants.

65.     The Individual Defendants were controlling persons of RLX, within the meaning of the Securities Act.  By virtue of their positions as directors or senior officers of RLX or Cogency Global, as alleged above, these Defendants each had the power to influence, and exercised same, over the Company to cause it to engage in the conduct complained of herein.  The Company controlled the Individual Defendants and all of RLX's employees.  The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of RLX.  Likewise, Cogency Global controlled Defendant DeVries, who signed the Registration Statement at the direction of Cogency Global, in her capacity as an employee representative of Cogency Global.  RLX, the Individual Defendants and Cogency Global were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act alleged in the First and Second Causes of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## FOURTH CAUSE OF ACTION
### For Violation of §10b of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants Except the Underwriter Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     This Cause of Action is asserted on behalf of all members of the Exchange Act Class against RLX and the Individual Defendants for violations of §10(b) of the Exchange Act, 15 U.S.C. §78(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

68.     These Defendants carried out a plan, scheme, and course of conduct which was intended to, and did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; and (ii) caused Plaintiff and the other members of the Class to purchase RLX ADS at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, each of these Defendants took the actions set forth herein.

69.     During the Class Period, these Defendants disseminated or approved the false statements specified herein, among others, which they knew, or deliberately disregarded, were materially misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     These Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for RLX securities in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     These Defendants, individually and in concert, directly and indirectly, by the use and means of instrumentalities or interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of RLX, as specified herein.

72.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse nonpublic information and engaged in acts, practices, and a course of conduct, as alleged herein, in an effort to assure investors of RLX's value and performance and continued substantial growth, which included the making of, or participation in the making of, false statements of material facts and omitting to state material facts necessary in order to make the statements made about RLX and its business operations and future prospects, in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of RLX ADS.

73.     As described above, these Defendants acted with scienter throughout the Class Period in that they either had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  These Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and, for the purpose and effect of concealing the Company's results and growth prospects, thereby artificially inflating the price of its ADS.  As demonstrated by these Defendants' omissions and misstatements of the Company's business strategy, these Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge

by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

74.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of RLX ADS was artificially inflated.  In ignorance of the fact that market prices of RLX ADS were artificially inflated, and relying directly or indirectly on the false and misleading statements made by these Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to, or recklessly disregarded by, these Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class acquired RLX  ADS at artificially high prices and were, or will be, damaged thereby.

75.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff, the other members of the Class, and the marketplace known the truth regarding the Company's business, which was not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased, or otherwise acquired, their RLX ADS, or if they had acquired such securities, they would not have done so at the artificially inflated prices that they paid.

76.     By virtue of the foregoing, these Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

78.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

**FIFTH CAUSE OF ACTION**
**For Violation of §20(a) of the Exchange Act**
**Against All Defendants Except the Underwriter Defendants**

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of RLX within the meaning of §20(a) of the Exchange Act, 15 U.S.C. §78t(a), as alleged herein.  By virtue of their high-level positions, agency, ownership, and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to have been misleading prior to, and/or shortly after, these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

81.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations, as alleged herein, and exercised the same.

82.     As set forth above, RLX and the Individual Defendants each violated §10(b) and Rule 10b-5 promulgated thereunder by their acts and omissions, as alleged in this complaint.

83.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these

Defendants' wrongful conduct, Plaintiff and the other members of the Class have suffered damages in connection with their purchases of the Company's securities.

84.     This action as filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as Class Representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

DATED:  August 4, 2021                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                                 */s/ Thomas L. Laughlin, IV*
                                                 Thomas L. Laughlin, IV (TL-8888)
                                                 Rhiana L. Swartz (RS-2332)
                                                 Jonathan M. Zimmerman (*PHV forthcoming*)
                                                 The Helmsley Building
                                                 230 Park Avenue, 17th Floor
                                                 New York, NY 10169
                                                 Tel.: (212) 223-6444
                                                 Fax: (212) 223-6334
                                                 tlaughlin@scott-scott.com
                                                 rswartz@scott-scott.com
                                                 jzimmerman@scott-scott.com

                                                 *Attorneys for Plaintiff Garnett*