UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEX GARNETT, Individually and on Behalf of All
Others Similarly Situated,

                                        Plaintiff,

                        -v-

RLX TECHNOLOGY INC., YING (KATE) WANG,
LONG (DAVID) JIANG, YILONG WEN, YUEDUO
(RACHEL) ZHANG, COLLEEN A. DEVRIES,
COGENCY GLOBAL INC., CITIGROUP GLOBAL
MARKETS INC., and CHINA RENAISSANCE
SECURITIES (HONG KONG) LIMITED,

                                        Defendants.

---

21 Civ. 5125 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

        This decision appoints lead plaintiffs and counsel in a putative securities class action.  On

June 9, 2021, plaintiff Alex Garnett filed this action under the federal securities laws on behalf of

purchasers of RLX Technology Inc. ("RLX") securities in connection to the company's initial

public stock offering ("IPO").  Garnett claimed, *inter alia*, that RLX and its co-defendants[1] had

made untrue statements of material fact and/or omitted material facts necessary to make their

statements not misleading.  These statements and omissions tended to conceal the facts—as

alleged, known to RLX—of forthcoming regulations in China that would constrain RLX's plan

to sell vaping products and thereby tend to harm the company's financial prospects.  Garnett

---

[1] Defendants are RLX; Ying (Kate) Wang, RLX's chief executive officer and board chair; Long
(David) Jiang and Yilong Wen, who were each RLX founders and directors; Yueduo (Rachel)
Zhang, RLX's head of finance; Cogency Global Inc., RLX's authorized U.S. representative for
purposes of the IPO; Colleen A. DeVries, Cogency's senior vice president; and Citigroup Global
Markets Inc. ("Citigroup") and China Renaissance Securities (Hong Kong) Limited ("China
Renaissance"), underwriters of RLX's IPO.

alleged that, as a result of RLX's actionable statements and omissions, he and the putative class bought RLX securities at a premium, unaware of the looming regulatory threat to RLX's prospects. Garnett further alleges that, when the adverse regulation later became public, RLX's share value dropped substantially, damaging him and members of the putative class.

After Garnett filed suit, eight movants—ultimately not including Garnett—sought appointment as lead plaintiff. Consensus among these movants as the proper lead plaintiff(s), however, has since been reached. Pending now is a joint motion from Chien-Lung Tseng, Billy Sung, and Jerry Yue (collectively, "Prospective Lead Plaintiffs") seeking appointment as co-lead plaintiffs and appointment of their respective attorneys as co-lead counsel. Of the eight movants who initially sought appointment as lead plaintiffs,[2] only Tseng, Sung, and Yue still seek such appointment. They represent that together they had the largest financial interest of the movants and contend that they are adequate and typical to represent the putative class, as Federal Rule of Civil Procedure 23 requires. Dkt. 51 ("Joint Stipulation") at 3. The other movants have since filed notices of withdrawal or of non-opposition to Prospective Lead Plaintiffs' motion.[3]

For the reasons that follow, the Court grants the unopposed motion, and appoints (1) Tseng, Sung, and Yue as lead plaintiffs; and (2) Wolf Haldenstein Adler Freeman & Herz LLP and Scott+Scott Attorneys at Law LLP as co-lead counsel.

---

[2] The eight consist of seven individuals (two who moved jointly) and one company. The seven individuals are: (1) Chien-Lung Tseng, Dkt. 22; (2) Jun Yan, Dkt. 25; (3) Claudio Sorbara, Dkt. 28; (4) Zhang Haotian, Dkt. 29; (5) Billy Sung and (6) Jerry Yue (moving jointly), Dkt. 35; and (7) Ling Jiang, Dkt. 39. The company is Trip Consultants Limited, Dkt. 34.

[3] *See* Notice of Non-Opposition of Claudio Sorbara, Dkt. 46; Notice of Non-Opposition of Zhang Haotian, Dkt. 47; Notice of Non-Opposition of Trip Consultants Limited, Dkt. 48; Notice of Non-Opposition of Ling Jiang, Dkt. 49; Notice of Non-Opposition by Jun Yan, Dkt. 50.

## I.    Background

### A.    The FAC's Allegations[4]

RLX manufactures and sells vaping products in China.  Dkt. 21 ("First Amended Complaint" or "FAC"), ¶ 14.  In January 2021, RLX undertook an IPO in New York.  *Id.* ¶¶ 1, 3. Its American Depository Shares ("ADS") are listed on the New York Stock Exchange under the ticker symbol "RLX."  *Id.* ¶ 3.

On January 19, 2021, RLX filed its final registration statement, and on January 22, 2021, a final prospectus (together with the registration statement, the "Offering Documents") in connection with the impending IPO.  *Id.* ¶ 25.  RLX issued and sold approximately 116,500,000 ADS through the IPO, yielding gross proceeds of approximately $1.4 billion.  *Id.*

Challenged here are two related sets of false and/or misleading statements by RLX—first, regarding its product's prospects for being regulated under China's tobacco licensing regime, and second, regarding RLX's financial prospects, given such future regulation.

First, RLX represented that its products would not fall under China's tobacco monopoly system.[5]  It represented that "there are currently no laws and regulations which specifically govern the distribution of e-cigarettes in the PRC."  *Id.* ¶ 27 (emphasis omitted).  RLX also stated that its products "are not currently defined as 'tobacco products' in the Tobacco Monopoly Law and its Implementation Regulation."  *Id.* (emphasis omitted).  RLX acknowledged that laws

---

[4] The following facts are drawn from Garnett's First Amended Complaint ("FAC"), Dkt. 21, and the parties' submissions on the lead plaintiff motions.  The Court accepts these facts as true solely for the purpose of resolving these motions.

[5] On June 29, 1991, the Standing Committee of the National People's Congress of China adopted the Tobacco Monopoly Law of the PRC.  FAC ¶ 27.  It created a state-run tobacco licensing system for so-called "tobacco monopoly commodities," including, *inter alia*, cigarettes, cigars, cut tobacco, and cigarette paper.  *Id.*

and regulations on the vaping industry might affect its financial prospects, but it stated that "there are currently no clear and specific national laws, regulations, rules or standards for the sale of e-cigarettes, including e-vapor products," except for regulations prohibiting sales to the underage and online advertisement and sales. *Id.* ¶ 28 (emphasis omitted). These statements, the complaint alleges, were false and/or misleading because RLX failed to disclose that "regulators in China were already working on a national standard for e-cigarettes" that would regulate them under the same rules or in a similar way to ordinary cigarettes. *Id.* ¶ 30 (emphasis omitted).

Second, RLX stated that it had been, and expected to continue, profiting from China's rapidly growing vaping market. *Id.* ¶ 29. Plaintiffs state that RLX contrasted this claim "with select financial results as a means of conveying to prospective investors that its then-existing financial condition and prospects were equally bright." *Id.* (emphasis omitted). This too was misleading, plaintiffs claim, because RLX did not disclose the effect that the coming regulation of the vaping industry would have on its financial prospects.

On March 22, 2021, China's Ministry of Industry and Information Technology posted draft regulations that confirmed that e-cigarettes would be regulated like previous iterations of tobacco products. *Id.* ¶ 35. That day, RLX's ADS closed at $10.15 per ADS, down nearly 48% from its previous close of $19.46 per ADS on March 19, 2021, the previous trading day. *Id.* ¶ 36.

On April 23, 2021, RLX filed its Annual Report (the "2020 Annual Report"). *Id.* ¶ 37. According to plaintiffs, the 2020 Annual Report "continued and reinforced" RLX's earlier misrepresentations in its Offering Statements with respect to RLX's regulation and anticipated financial performance. *See id.* ¶ 38.

On June 2, 2021, RLX published its first quarter 2021 financial results and disclosed that it had increased its net revenues 48% quarter over quarter, and that its second quarter gross margin would remain constant. *Id.* ¶ 41. On June 4, 2021, RLX's shares declined again, to $9.90 per ADS, down from its previous close of $10.87. *Id.*

**B.      Relevant Procedural History**

**1.      Garnett's Complaint and FAC**

On June 9, 2021, Garnett filed the Complaint in this case, Dkt. 1, and published a notice of this action on *BusinessWire*, *see* Dkt. 40, Ex. 1; Joint Stipulation at 1, a "widely circulated national business-oriented . . . wire service," 15 U.S.C. § 78u–4(a)(3)(A)(i); *see also, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (noting that *BusinessWire* is "a widely-circulated, national, business-orientated news reporting wire service"). On August 4, 2021, Garnett filed the FAC. Dkt. 21. As noted, it alleges that RLX and the remaining defendants made false and misleading statements and failed to disclose material, adverse facts about RLX's business, operations, and prospects, *id.* ¶¶ 48–84, which violated §§ 11, 12(a)(2), and 15 of the Securities Act of 1933, *codified at* 15 U.S.C. §§ 77k, 77l(a)(2), and 77o, FAC ¶ 2. It brings claims on behalf of a putative class consisting of all persons who purchased or otherwise acquired RLX ADS either pursuant or traceable to RLX's Offering Documents or otherwise between January 22, 2021 and June 2, 2021, and who were damaged thereby. *Id.* ¶ 1.

5

### 2.    Motions for Appointment of a Lead Plaintiff

On August 9, 2021, the deadline to move for appointment as lead plaintiff, eight persons or entities moved to be appointed.[6]  These were Chien-Lung Tseng, Dkts. 22–24; Jun Yan, Dkts. 25–27; Claudio Sorbara, Dkts. 28, 32, 36; Zhang Haotian, Dkts. 29–31, 33; Trip Consultants Limited, Dkts. 34, 38; Billy Sung and Jerry Yue jointly, Dkts. 35, 37, 40, 42; and Ling Jiang, Dkts. 41, 43–44.

On August 10, 2021, the Court issued an order directing that responses to the motions for appointment lead plaintiff were due on August 23, 2021.  Dkt. 45.  On August 13, 2021, Claudio Sorbara filed a notice of non-opposition to the competing motions for such appointment, Dkt. 46, and was followed by similar notices, on August 20, 2021, from Zhang Haotian, Dkt. 47; on August 23, 2021, from Trip Consultants, Ling Jiang, and Jun Yan, Dkts. 48, 49, 50.  The same day, Sung, Tseng, and Yue filed their proposed stipulation and order.  Dkt. 51.

## II.    Selecting the Lead Plaintiff: The PSLRA Requirements

Motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under the securities laws are governed by the Private Securities Litigation Reform Act ("PSLRA").  *See In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 568–69 (S.D.N.Y. 2015); *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012).  The PSLRA directs the Court to appoint as lead

---

[6] August 9, 2021 was the deadline because notice of the action was published on June 9, 2021. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("[N]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."); Joint Stipulation at 1 ("[O]n June 9, 2021, counsel . . . published a notice . . . which alerted investors to the pendency of the Action and the deadline of August 9, 2021, to file a motion seeking Lead Plaintiff status.").

plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has either "filed the complaint or made a motion in response to a notice," *id.* § 78u–4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the Court, has the "largest financial interest in the relief sought by the class," *id.* § 78u–4(a)(3)(B)(iii)(I)(bb); and (3) satisfies all the requirements of Federal Rule of Civil Procedure 23, which governs class actions, *see id.* § 78u–4(a)(3)(B)(iii)(I)(cc).

As noted, Tseng, Sung, and Yue are the only movants who continue to seek appointment as lead plaintiff. Accordingly, the Court will consider only Tseng, Sung, and Yue's motions for appointment and for appointment of their chosen counsel as lead co-counsel.

### A.    Notice

The Prospective Lead Plaintiffs satisfy the first requirement, as they timely moved for lead plaintiff status. *See* 15 U.S.C. § 78–u4(a)(3)(B)(iii)(I); *City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010).[7]

### B.    Financial Interest

In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). These *Lax* factors include:

---

[7] Because notice of the action was published on June 9, 2021, *see* Joint Stipulation at 1, the deadline to file a motion for appointment as lead plaintiff was August 9, 2021. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). That day, the Prospective Lead Plaintiffs timely filed their motions to serve as lead plaintiff.

(1) the total number of shares purchased during the class period;
(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
(4) the approximate losses suffered.

*City of Monroe*, 269 F.R.D. at 293.

Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."), *reconsidered on other grounds*, *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *Bo Young Cha*, 2012 WL 2025850, at *2; *Reimer v. Ambac Fin. Group Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (KNF), 2007 WL 2197836, at *6–7 (S.D.N.Y. July 31, 2007); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104–05 (S.D.N.Y. 2007); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, most courts simply determine which potential lead plaintiff has suffered the greatest total losses[.]" (quotation marks omitted)).

Here, the Prospective Lead Plaintiffs represent that they collectively suffered $4,294,081.60 in losses, comprised of $1,986,596 by Sung and Yue, Dkt. 37 at 6, and $2,307,485.60 by Tseng, Dkt. 24 at 6. No other individual or entity has represented that it has a greater financial interest in the relief sought by the class; indeed, other movants withdrew their

motions for appointment as lead plaintiff, or filed motions of non-opposition to the Prospective

Lead Plaintiffs motions, because they experienced smaller losses.[8]

   That the Prospective Lead Plaintiffs are a coalition of three individuals does not impair

their bid.  The PSLRA expressly permits "a group of persons" to be appointed lead plaintiff.  15

U.S.C. § 78u–4(a)(3)(B)(iii)(I).  And courts in this District have recognized that a small group

may appropriately be appointed lead plaintiff.  *See, e.g., Janbary v. Canadian Solar, Inc.*, 272

F.R.D. 112, 119 (S.D.N.Y. 2010) (appointing as lead plaintiff a group of "sophisticated

individuals who have demonstrated their intent to participate directly in this litigation and their

willingness and ability to serve as class representatives"); *Varghese v. China Shenghuo Pharm.

Holdings, Inc.*, 589 F. Supp. 2d 388, 391–92 (S.D.N.Y. 2008) ("[I]n this District . . . unrelated

investors [may] join together as a group seeking lead-plaintiff status on a case-by-case basis, if

such a grouping would best serve the class."); *but see Goldberger v. PXRE Gr., Ltd.*, 06 Civ.

3410 (KMK), 2007 WL 980417, at *3–5 (S.D.N.Y. Mar. 30, 2007) (declining to appoint a group

of seven individual investors as lead plaintiff notwithstanding that, in the aggregate, the group

had the largest financial interest in action).

   To ascertain whether a lead plaintiff group is appropriate, courts generally consider three

factors: "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence

that the group was formed in bad faith." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133

(JPO), 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012); *see also Varghese*, 589 F. Supp. 2d at

392 (describing factors as "(1) the existence of a pre-litigation relationship between group

members; (2) involvement of the group members in the litigation thus far; (3) plans for

---

[8] *See, e.g.*, Dkt. 26 at 7 ("Movant suffered an approximate loss of $18,700.55."); Dkt. 31 at 5
(Haotian "incurred losses of approximately $549,049[.]"); Dkt. 32 at 3, 5 (describing losses of
$80,399.79); Dkts. 41 at 5, 43 Ex. C (citing a loss of approximately $93,058.58).

cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa").

By those standards, the Prospective Lead Plaintiffs group is qualified for appointment. First, the group is "relatively small and therefore presumptively cohesive." *Janbay*, 272 F.R.D. at 119. It consists of just three individual investors. *Cf. Peters*, 2012 WL 946875 at *7 ("[C]ourts appear to generally agree that a group comprising five or fewer members is appropriate[.]"). Second, although Tseng originally filed separately from Sung and Yue to be lead plaintiffs,[9] the three have since coalesced and demonstrated their ability to work cooperatively. *See* Joint Stipulation at 3. They have communicated with each other through counsel and spoken by telephone. *Id.* And they reasonably agreed that a prolonged contest over appointment "is not in the best interests of the Class." *Id.* Each professes to be "committed to supervising the conduct of this litigation by their counsel and to ensuring that counsel coordinate appropriately and avoid duplication of effort in the conduct of the litigation." *Id.* at 4. This sufficiently "demonstrate[s] their intent to participate directly in this litigation and their willingness and ability to serve as class representatives." *Janbay*, 272 F.R.D. at 119. Third and finally, there is no indication that the group was formed in bad faith. *See Peters*, 2012 WL 946875, at *9 (contrasting "a group that is able to obtain lead plaintiff status only by aggregating the much smaller losses of a number of class members," which "potentially runs afoul" of the PSLRA, with one that "comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward)," where the PSLRA's policy is "not disserved by allowing those individuals to join together"). There is, for example,

---

[9] Sung and Yue filed a joint declaration at the time of their motion that described the cooperative steps they had taken together. *See* Dkt. 40, Ex. E.

no suggestion that the group was formed to box out an outside candidate for lead plaintiff; on the contrary, had the group not been formed, the $2,307,485.60 loss claimed by its member, Tseng, would have been highest among all movants.

In sum, all considerations favor the Prospective Lead Plaintiffs, the group of individuals with, by far, the largest losses.

## C.      Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiffs satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy. At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are pertinent." *Bo Young Cha*, 2012 WL 2025850, at *6 (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citations omitted). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000)). "The claims of [the Prospective Lead Plaintiffs] are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998) (citations omitted).

No party or movant has contested the Prospective Lead Plaintiffs' typicality.  And no party or movant has claimed that they "will not fairly and adequately protect the interests of the class" or is subject to "unique defenses" that render the Prospective Lead Plaintiffs incapable of adequately representing the class.  15 U.S.C. § 78u–(4)(a)(3)(B)(iii)(II).

Because the group consisting of Tseng, Sung, and Yue satisfies all PSLRA requirements as of this early stage, the Court appoints them co-lead plaintiffs.

## III.    Appointing Lead Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval.  *Id.* § 78u–(4)(a)(3)(B)(v).  The Prospective Lead Plaintiffs have selected the law firms of Wolf Haldenstein Adler Freeman & Herz LLP and Scott+Scott Attorneys at Law LLP as co-lead counsel.  Having reviewed the firms' submissions as to their pertinent background and experience, including their experience litigating securities class actions, the Court finds the two firms qualified to serve as co-lead counsel.  Accordingly, the Court appoints them as co-lead counsel.

As similarly situated courts have noted, this joint appointment "is done with the understanding that there shall be no duplication of attorney[s'] services," and that counsel "will work together to maximize recovery for the proposed class."[10]  *In re Millennial Media*, 87 F. Supp. 3d at 572 (citing *In re Oxford Health Plans*, 182 F.R.D. at 50; *Gordon v. Sonar Cap. Mgmt. LLC*, No. 11 Civ. 9665 (JSR), 2012 WL 1193844, at *2 (S.D.N.Y. Apr. 9, 2012)).

---

[10] Tseng, Sung, and Yue have also stipulated that they are "committed to supervising the conduct of this litigation by their counsel and to ensuring that counsel coordinate appropriately and avoid duplication of effort in the conduct of the litigation."  Joint Stipulation at 4.

## CONCLUSION

For the reasons set out above, the Court grants Tseng, Sung, and Yue's motions for appointment as lead plaintiff, and appoints Wolf Haldenstein Adler Freeman & Herz LLP and Scott+Scott Attorneys at Law LLP as co-lead counsel.

The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 22, 25, 28, 29, 34, 35, and 39.

The Court directs the parties to meet and confer and, by **September 8, 2021**, to file a joint letter setting out an efficient proposed schedule for next steps in this case, including proposed dates for the filing of (1) a consolidated amended complaint and (2) defendants' response. If defendants anticipate that their response will take the form of a motion to dismiss, the parties shall include proposed dates for the opposition and reply briefs as well.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: August 31, 2021
       New York, New York

13